Argued January 9; affirmed March 4, 1930.

## CURRY *v.* GIBSON ET UX.

(285 P. 242)

*Frank S. Senn* of Portland (Senn & Recken of Portland on the brief) for appellants.

*Wm. P. Lord* of Portland (Lord & Moulton of Portland on the brief) for respondent.

McBRIDE, J.  This is an action to recover damages for an injury, which the plaintiff, William H. Curry, claims he sustained by reason of defendant's wife, Julia Gibson, having negligently driven a car against or over him.  Plaintiff, who is totally blind, was crossing Lombard street at the point where it intersects Polk street and crosses it at right angles.  Defendant, Mrs. Gibson, was driving west on Lombard street, and, as she states, with the right-hand side of the automobile about two or three feet from the curb on the right-hand side as one goes west.

Plaintiff, who stated that he was familiar with the streets, and although blind, had traveled the route he was then going for years. He claims that when he arrived at the southwest corner of the intersection of Lombard and Polk streets, by feeling with his cane, a stick, metal shod and about three and one-half feet long, he "squared himself" and started to cross to the north side of Lombard street, listening for the approaching vehicles and guiding himself by tapping with his cane; that he heard no sound of an approaching vehicle and had crossed the street car track, which is in middle of Lombard street, when he was struck by the car driven by Mrs. Gibson and rendered unconscious.

An important feature in the case, though not necessarily controlling, is whether plaintiff stopped in the street after crossing the street car track in the center. He seems to have that characteristic, often observed in elderly blind people, of not being able to answer a question directly, but rather argumentatively, and to have had all the stubborness of Balaam's saddle animal without its heaven-sent gift of expressing himself in direct language. It is easier to recount his testimony than to give the substance of it. After detailing his line of travel until he started across Lombard street at its most westerly intersection with Polk street, his testimony, on direct examination, is as follows:

"Q. Well, when you were ready to proceed, how rapidly did you go?

"A. Then it didn't take me long to go across there.

"Q. Well, that doesn't directly answer my question. That speaks of what you usually do. Tell me what you did this time.

"A. Well, I didn't time myself this time.

"Q. Well, did you walk, run, or what did you do?

"A. Well, I walked; I didn't run.

"Q. Did you stop on the way?

"A. I don't think so.

"Q. Well, what do you know about it?

"A. Not till I was stopped by the car.

"Q. You didn't stop until then?

"A. Not that I know of. I don't—

Mr. Senn: Let him answer the question.

Mr. Moulton: Well, I want to know whether you know whether you stopped or not.

Mr. Senn: He said he didn't know.

Mr. Moulton: What about that Mr. Curry?

"A. What?

"Q. Did you stop or not, or do you know whether you stopped or not?

"A. Well, I didn't touch anything with my stick. What should I stop for?

"Q. Well, you evade my question.

"A. No.

"Q. Go off on another tangent; you answer directly what I ask you.

"A. Not that I know of.

"Q. Do you remember whether you did stop or not?

"A. Not that I know of. What should I stop for?

"Q. Well, you ask me a question. When I ask you one you should answer my question directly. Do you know whether you stopped or not?

"A. I said 'no.'

"Q. How is that?

"A. No.

"Q. You don't know?

"A. I say I didn't stop.

"Q. Oh well, that is what I want to find out—

"A. Not to my knowledge.

"Q. —is whether you have any knowledge on the subject or not. Do you know whether you stopped or didn't stop?

"A. Well, I had to stop.

"Q. From the time you left the curb to go across Lombard street until you were hit, do you know whether you stopped or not?

"A. No, I don't think so.

"Q. Well, I still haven't got an answer to my question. Do you know? You can say 'yes,' you do know, or 'no,' you don't know.

"A. Well, I don't know.

"Q. You don't know?

"A. No."

The plaintiff was not cross-examined on this point. Being recalled in rebuttal, he testified as follows:

"Q. * * * did you stand in that street before you were hit, stop and stand in the middle of the Lombard street four minutes?

"A. No, sir.

"Q. Did you stop there any period?

Mr. Senn: Just a minute; I object to that.

"A. Not that I know of."

This was called out in response to the testimony of Mrs. Walsted, who was riding with Mrs. Gibson and who testified that Mrs. Gibson had stopped the car four or five minutes after observing the plaintiff standing in the street.

Mrs. Gibson testified that on the evening of the accident she was driving along Lombard street in a westerly direction and had entered the intersection of said street with Polk street and was pretty close to the westerly line of the intersection of the two streets when she first saw plaintiff in about the center of the street, and then she stopped, coming to a complete stop, and about the same time plaintiff stopped; that when he stopped, she started to go again, starting up very slowly, not more than two or three miles an hour, the front end of her car passing him about four or five feet distant; that when the front end of the car passed him, he was still standing still, then she heard a noise, something thump on the car and threw on her four-wheel brakes and stopped again; that she saw no cane in his hands; that she got out of the car and went back

and found him two or three feet from the rear of the car on the left-hand side, and that she had no idea that he was blind and thought he had stopped to give her an opportunity to pass. While the testimony of this witness, upon cross-examination, was somewhat confused as to distances and the position of the plaintiff and other particulars, she adhered closely to her statement that she first stopped completely to give plaintiff an opportunity to pass, and then started up slowly while he was still standing, supposing that he was waiting for her to go ahead. As to her stopping, she is contradicted in a measure by the evidence of Mr. F. J. Starke, who arrived at the scene of the injury immediately after the accident and whose testimony, as to what Mrs. Gibson said to him in regard to the cause of the accident, is as follows:

"Q. But what did she say about having seen the man or otherwise?

"A. Well, she made the remark at that time that she thought he was going to stop, that she had slowed up, and thought that he was going to stop.

"Q. Did she say she had stopped, or merely slowed up?

"A. I don't believe she mentioned that. Yes, she did, she said that she had slowed up.

"Q. She had slowed up?

"A. Thinking that he was * * * to let him pass, and then she thought he was going to stop, so she went to go on by him."

This witness was casually near the scene of the accident and wholly disinterested, and a jury would be likely to accept his statement of what was said by Mrs. Gibson at the time as being more in accordance with the facts than the statement of an interested witness made months afterward when she had had time to reflect on the possible bearing of any admission against her interest.

Mrs. Walsted, who was riding in the car with Mrs. Gibson, seated at her right, and therefore farther away from plaintiff who was on the left of the car, testified that they were driving west on the right-hand side of Lombard street when they entered the intersection with Polk street and about two feet from the curb; that when they came to about the center of Polk street, she saw a man standing near the south side of Lombard street; that he came across to about the center of Lombard street, then stopped and Mrs. Gibson stopped; that it looked like an invitation for her to go on, and she went on slowly, and, when they had passed the intersection, there was a thump and Mrs. Gibson yelled; that plaintiff was not on the regular crossing, but was off of it and was past the corner a little, about the distance from witness to "that gentleman," indicating one of the jurors. As the distance between the witness and the juror was not indicated in the transcript, and neither have been made exhibits here, the distance is not shown, but was probably several feet. The witness estimated that Mrs. Gibson stopped four or five minutes for plaintiff to pass, which the jury might well have concluded was an extravagant and improbable statement. The witness observed that plaintiff had a stick or umbrella in his hand, and, from his actions, she stated "we thought he was tipsy." She was cross-examined on this statement to a considerable extent, but finally the further examination was stricken out. Her statement, that plaintiff was in the street when he was struck, is contradicted by Starke, who, in substance says, that plaintiff was lying across the line from the sidewalk of Polk street prolonged from north to south. The cross-examination disclosed several minor discrepancies in the testimony of the witness Mrs. Walsted, who was a

very zealous partizan of defendant, but we are not now seeking to weigh the testimony, but merely to indicate that, taking it as a whole, there was sufficient evidence to take the case to the jury.

While it is quite possible that were the members of this court sitting as triers of fact, they might find that the preponderance of evidence was with the defendant, or even disagree among themselves in that regard, we are only concerned with the proposition as to whether there was evidence sufficient to take plaintiff's case to the jury. Two things stand out plainly, even in defendant's evidence, one, that plaintiff's actions as detailed by Mrs. Gibson and Mrs. Walsted, were rather abnormal or unusual, so much so that Mrs. Walsted was impressed with the idea that he was intoxicated, and, two, that under the conditions, as Mrs. Walsted described them, and Mrs. Gibson was at least in a position to have observed them, no horn was sounded to warn plaintiff of Mrs. Gibson's intention to pass. A single note from that appliance would probably have averted the injury. Whether the accident occurred as these women testified it did, or whether, in spite of the plaintiff's halting manner of testimony, they believed that the defendant carelessly drove against plaintiff without stopping, was a matter for the jury and not for this court.

The judgment is affirmed.

Coshow, C. J., Rand and Rossman, JJ., concur.